United Fire & Casualty vs. Prate Roofing You can see him, but we cannot yet. There he is. Your Honor, I'm here. All right. Wonderful. Thank you. You may proceed whenever you're ready. May it please the court, counsel. I am David Miller, spelled the hard way, M-U-E-L-L-E-R, here on behalf of the Appalachian United Fire & Casualty Company. At the outset, I want to point out that this is essentially the same case involving the same imputed liability endorsement as this court enforced in Liberty Mutual vs. Statewide Insurance Company. I want to direct the court's attention to the only intervening circumstances of significance since the decision in Liberty Mutual. It was this court's decision in the Aguirre vs. Turner Construction Company to the effect that imputed liability or vicarious liability does not exist under Section 414 of the Restatement Second of Torts. It is significant that Section 414 is the basis for construction negligence claims since 1995 going forward following the repeal of the Illinois Structural Work Act. Aguirre was then adopted by the Illinois Supreme Court in Kearney vs. Union, a Pacific Railroad Company, in which the court said... ...that it would not be possible for the company to continue to operate in the United States because of these changes in Illinois law. But I'm not sure how that really addresses the duty to defend issue, particularly in light of the Pekin Insurance cases in Sentex Homes and Lexington Station, where essentially this problem seems to have been addressed and resolved in favor of finding a duty to defend. Your Honor, I am not in any sense an exonerating prate. As the court well understands, there was a settlement of the plaintiff's cases involving all seasons, and that settlement was of the contribution claims of a prate against all seasons. And by that settlement, all seasons was released from any liability, and prate remained as liable for prate's own proportionate share of the common liability. And that's what we refer to as fault apportionment. Neither the Sentex A case nor the Lexington Station case either addressed or had anything to do with fault apportionment or contribution. We point out that the complaint in this case specifically is brought under Section 414. It is not an agency claim. If you are going to allege an agency right to recover, as the Carney case says, then you've got to make allegations to support an agency claim. In Carney, the court specifically refused to consider an agency claim because there were no allegations to that effect. And that is essentially a consistent with this court in the wire in recognizing the difference between… I guess I'm, I just don't quite understand your confidence that there couldn't possibly be any vicarious liability imposed on prate from the outset of this case. Okay, let me address that in the context. And I would specifically direct the court's attention to the complaint filed by Devon Bank, which appears in our appendix at page 38. As the Illinois Supreme Court took great pains to do in distinguishing between 414, direct negligence liability, and what is required for agency exposure. It pointed out that under Section 414, there is a duty on the part of a controlling defendant to exercise reasonable care and liability results from the failure to do so. In other words, to exercise control with reasonable care. That is direct liability under Section 414. The complaint here is limited to a 414 theory. Paragraph 4 of the complaint posits the only duty being the duty on the part of the crate to exercise reasonable care in the control of said construction site. Therefore, the only theory is a direct negligence theory against crate under Section 414 of the restatement as second of torts. Mr. Mueller, it's Judge Scudder. Don't you have to read Paragraph 4, though, in connection with Paragraph 5 of the complaint? And Paragraph 5 of the complaint contains some of that agency language. And Paragraph 5 of the complaint then has a serial listing of alleged negligent acts or omissions. And just reading those allegations, I don't know whether any of it can be proven, but just reading the allegations, it sure seems to suggest vicarious liability for crate roofing on the basis of its failure to do those itemized things there in the complaint. And that is direct negligence on the part of crate roofing. Go ahead, Judge Hamilton. Doesn't that point depend upon who is included in the phrase by and through its agents, servants, and employees? Well, those allegations, as the court is well aware, and we as practicing lawyers in litigation, amount to nothing more than boilerplate conclusions. There's a reason they're boilerplate, though, and that's because, as the Illinois Appellate Court pointed out in the Pekin cases, the person making those allegations, the underlying plaintiff, is rarely going to have good information at the time of filing that complaint about the relationships among the various contractors. And so, of course, they're going to keep it broad because they don't know how defendants may try to point the finger at each other. Well, let me posit this, which I know to a certainty, that there has never been, and I was defending cases under the Illinois Structural Work Act, trying and appealing to them, and I did the amicus brief in the Carney case on behalf of the Illinois Chamber of Commerce on this exact point. There has never been a case in which a plaintiff prevailed on an agency theory under any standard. Plaintiff's lawyers do not allege agency causes of action because the burden of proof is far more difficult than that for a recovery for direct negligence under Section 414. In our reply brief, we put in the whodats, there is not one single person in the underlying case that is making a claim that there is an agency relationship. In fact, as the court is aware, a crate. Mr. Miller, let me ask you, you know, you've described as a fiction, the notion that the duty to defend is broader than the duty to indemnify. I frankly, that's in your reply brief, I had thought that was pretty much black letter law. But let's suppose, suppose the underlying plaintiff is trying an entirely new theory for vicarious liability. Even acknowledges at the outset that they're seeking a ruling in which they're ultimately going to be asking the Illinois Supreme Court to overrule controlling precedent that would otherwise make their claim impossible. Under those circumstances. Do you think an insurer can say, Nope, we've got no duty to defend because controlling law says there's no vicarious liability here. I do what they do, as we did in this case, and that is file a declaratory judgment action in order to exonerate the exclusion, not exclusion, but rather the lack of coverage under the insuring agreement. As this court said in the produce versus transportation co it is the actual complaint, not some hypothetical version that must be considered, and the Illinois Supreme Court said the same thing. We're not even going to look at an agency theory, which isn't a ledge and under the Illinois Code of Civil Procedure. Any theory has to be supported by facts section 2603 says which are concisely alleged, and, and if you're going to have an alternative agency theory, such as the court posited or based upon agency, then you've got to specifically allege the facts which established an agency theory that is incumbent upon the plaintiff. What was what I don't what I don't understand though is, I understand that you're, you're saying the crate should have a great defense to any such point. What I don't understand is why you don't have a duty to file the motion for them. I also had a question about the extent to which you're relying upon the Illinois Code of Civil Procedure, particularly since the state filed its action in federal court subject to the federal rules of civil procedure. I am addressing those in reverse order. I understand the courts, a concerns in that regard, but if we're relying upon the rule in the syntax and the rule in Lexington station. We have to look at the pleadings, where in those claims were considered. And if we're looking at Illinois law as posturing the claims, then there must be separate counts, and there must be precision in the pleading itself. You think that the Illinois Code of Civil Procedure governs this question. As far as this case is concerned. No, as far as the question over all this concern, since we're focusing upon substantive Illinois law, as far as the duty to defend is concerned, I believe that the answer is yes. The Illinois Supreme Court has consistently consistently said that number one, there is no such thing as implied indemnity, which would be the conclusion here, if there were to be any consideration of a vicarious liability recovery based upon an agency theory. And as we point out, you cannot have a contribution claim, which by definition is fault apportionment in the context of an agency theory, because contribution presupposes that both the contributee and the contributor pay their fair share. Whereas vicarious liability presupposes indemnity, multiple tort visas instead of imputed liability. And that is what Illinois, and the Illinois Supreme Court, ever since 1978 in the Skinner case has said that we are a fault apportionment jurisdiction. And there is no such thing other than in the instance of a pure vicarious liability setting, which is not alleged here for indemnification. And that's substantive law, not Illinois procedural law. Yes. Your time has expired, so we'll have to move to Miss, is it Wheeler? Wyler, Your Honor. Miss Wyler, you may proceed. Good morning. May it please the court. My name is Catherine Wyler. I represent Prate Roofing in this matter. United Fire owed Prate a duty to defend. The district court's ruling should be affirmed. United Fire's focus, as we've been discussing even this morning, is that it's it's claimed the claim here cannot somehow exist in the context of construction negligence, and that is simply incorrect. And I think the best starting point for that is to go back to some of the questions that you, Judge Scudder, and you, Judge Hamilton, were asking about the actual language in the complaint here. And Judge Scudder, you. If we could talk about what the policy covers. Yes. I think it's agreed that this policy rider that was a condition of this subcontracting relationship, and I understand that this is fairly common in the industry, required the named insured subcontractor all seasons to obtain a rider to cover the general contractor, your client for vicarious liability respondeat superior liability to the extent that there could be a claim that your client crate would be responsible for the torts of all seasons. That's what vicarious liability is that's what this policy covers is that. That's correct. We all agree on the scope of the coverage. Yes, it's very it's very cheap coverage as I understand it as well. Right. It only coverages what the coverage is what they charge for it. You know that we understand that the, the rider is really inexpensive, and is very common in these kinds of subcontracting situations or circumstances in the construction industry. And, and so that's just a background fact. And also, we understand the scope of the coverage to be limited to vicarious liability. So to trigger the duty to defend even though the duty to defend is broader than the duty to identify to trigger the duty to defend the underlying complaint must allege facts to suggest an agency relationship because vicarious liability is agency liability arises because of principles of agency law based on the relationship between the parties here, the general contractor your client and the subcontractor all seasons. Do we have any allegations of an agency relationship between your client and all seasons in the underlying operative complaint. Yes, Chief Judge Sykes, and that actually is what I was about to start with, in response to or related to what Judge Scudder and Judge Hamilton were asking the complaint itself. And I know the court has this. As Council said, if you're going to go to paragraph five. That's not enough. That's just a conclusory allegation. It's not a factual allegation. Actually, Your Honor, I was going to go to paragraph three, which, which states, and I won't take too long reading this, I know that again I know the court has it at the aforesaid time and place pre roofing individually and through its agents servants and employees was present during the course of the erection construction repairs alteration, etc work and I'm looking, there's nothing in that paragraph that refers to an agency relationship between crate and all seasons I'm looking for scope of this coverage which you've just admitted the use of the phrase, and its agents servants and employees is sufficient that's what the Illinois petition, because that's a boilerplate conclusory allegation it doesn't suggest an agency relationship between these two parties which is what's necessary to trigger the duty to defend and that's what the two peaking cases from the Intermediate Court of Appeals of Illinois peaking versus syntax homes and peaking versus Lexington that's what the point that was in their analysis of this boilerplate reference to individually and through its agents servants and employees. Yes, that's an analytical error for the substantive reasons that vicarious liability is distinct from direct liability and depends on an agency relationship the basic fundamental difference between agency liability and direct liability for one's own towards. So if you're on a plane here if there was a duty to defend because this complaint provided a factual basis for there to be an agency relationship between crate and all seasons such that all seasons towards are imputed to pray that that's that's just wrong there there aren't any of those allegations in this complaint. The, the, the facts of the complaint the underlying allegations Your Honor concern, the relation I disagree, Your Honor, and I disagree, because the description of the relationship between all seasons and praise in the complaint, they describe a relationship between these two entities where praise is responsible in certain respects for the work site, allegedly, and there is there is a question about whether pray had anything to do with the activity that was happening at the work site versus all season that was all seasons that was actually coordinating the roofing work at that work site. Allegations with respect to all seasons and its relationship. It's explained Your Honor earlier on in the complaint where they're describing the two entities, the, the relationship you have early in the complaint, where the events are taking place you have a discussion about exactly what crate was responsible for that the decedent was working for all seasons that the decedent was working as a laborer on the roof, and that the. And you have you had And in fact that is the same type of analysis that the Illinois Supreme Court points to in Carney and I realized she just likes that Carney, we were both our restatement for one for direct liability allegations I'm looking for allegations of an agency relationship that had it had a right of control over all season sufficient to create an agency relationship so that all seasons was acting for its principal crate. And principal crate is liable for its torts, that's what would trigger this coverage, and only that, that, that is the language that is included in paragraphs three and four that we wait, we have been discussing, and that is the language that. Yes. As I understand this problem. We generally and most state law I think is different states that I'm familiar with. Doesn't try to determine the duty to defend based upon a conclusion about at the outset of the case about who is liable for what and under what theories. Rather, we consider potential exposure. And is there anything in the underlying I Allah estate complaint that forecloses. The estate from asserting vicarious liability against crate for direct negligence by all seasons. No, Your Honor, I understand I would have thought that a plaintiff in those circumstances as as the court noted in the beacon cases, basically doesn't know enough about the relationships among the various defendants to be able to commit, and therefore tries to keep options open. See what develops during the during the suit. Now I would think that if, if, if it makes a difference to somebody. It would be possible in in the underlying tort suit to try to force the plaintiff to choose one theory or another or to present a summary judgment motion for example the knocks out the possibility of vicarious liability. Yes, Your Honor. But at that point, I'm sorry, go ahead. At that point, you're past the point of analysis of a duty to defend argument and that is exactly the point here. There is nothing in the complaint that forecloses the possibility of an agency claim, and at that point, the duty to defend is triggered. And I just want to go back to one last thing related to Chief Judge Judge sector questions about the only Supreme Court, the line of cases that we have these peak in cases. It's a long line, and it's not just published decisions there are multiple unpublished decisions to these come from, at least as best, our research shows, three of the five district courts in the, in the Illinois appellate court. And most importantly, my point to you, Your Honor is the, there have been attempts to appeal these to the Illinois Supreme Court, the Illinois Supreme Court has not granted discretionary review over any of these. And I think that suggests that there, there is not concern, or at least there is not a need felt by the Illinois Supreme Court to intervene and correct a misinterpretation of the law here. What about cases after Carney. Yes, all of these cases, every single one of them came down after Carney, all of the peaking cases are post Carney. Well, the two peaking cases that are most at issue here. And I guess peaking must issue a lot of these policies. Every one of these is called peaking. I'm happy to walk the court through them their syntax homes which is a 2017 case. There's the triple a masonry case which references it's not as directly on point that it certainly references syntax there's Lexington Station, also a 2017 case. There's a fourth district case called poor construction services from 2019. Again, as an Illinois appellate practitioner I realized that the appellate court would have my head for referencing these under Rule 23, excuse me, but there are, there are cases under Rule 23 from 2019 from 2018 from 2017 from different appellate courts, all of them, all of them reaching the same conclusion. Many of them having given rise to petitions for leave to appeal. All of those PLA is being denied, and they are all postcard, but I think we can all agree as experienced appellate practitioners that state Supreme Court's often like the US Supreme Court. Wait for issues to percolate in the lower court until there is a reason to intervene. I don't think we can draw any conclusions from that. If to appeal has been denied and the even the Illinois intermediate appellate courts in these many peaking decisions admit to a great deal of conceptual confusion in this area that the state Supreme Court attempted to clarify to a degree as to the substantive basis for liability in these construction law cases in the Carney case. Yes, so our, our job is to do this is a coverage dispute here and our job is to determine what the state Supreme Court would rule as to this coverage dispute and whether knowing what we know from Carney, the state Supreme Court would require some allegation of an agency relationship between the general contractor and the subcontractor to trigger this coverage, which, as everyone agrees, only covers agency liability based on agency law. And, and your honor I think the Illinois, the Supreme Court in Carney did precisely that and if I may, it's in paragraph 38 of the Carney decision, it's the last one of the last sentences, and it states agency law, under which an employer may be vicariously liable for the And familiar with that phrase because I wrote it. Yes, Your Honor Yes you did certainly and you absolutely correctly anticipated in a wire, how the Illinois Supreme Court would decide this issue, however, and that works against you here, because the court is recognizing that there's a distinction and a sharp distinction between agency liability vicarious liability respond yet superior liability goes by different names and direct liability, and so would require some allegations of an agency relationship in the underlying complaint, in order to trigger a duty to defend for this kind of coverage. And as the Illinois appellate court has held the language in the complaint here, similar language is sufficient to do that. I see that my time is up if there are no further questions from the court. We asked that the court from the district court. All right, thank you very much, Mr Miller your time had expired, you may have a minute of extra time if you have any closing thoughts. I have many closing thoughts but I will condense them but down to this as a chief judge Sykes has said, they said, looking at the wire and looking and addressing the judge Hamilton say concerns. There is no possibility of vicarious liability here where we have an admission the judicial admission that the relationship was that of independent contractor to contractor and we also have contribution. I don't understand that point. You say there's a judicial admission. What I see is a litigation strategy that says we think we're entitled to win on this ground, but we know that we might lose on that basis. So we want to be prepared to, to, to defend on alternative grounds as well. As far as the rule 36 a request. I was seeking the information as to whether we are dealing with joint tort feasors, to whom the remedy of contribution applies. We also have here, a settlement of the case, which proves out that this was fault apportionment and following the settlement, there could clearly be no attorneys fees, because any settlement under an agency theory, as they would have it automatically released crate. Well, if that's right, why don't, why can't you all just file that motion to get prayed out of the case, because we weren't defending crate, and because the attorneys that were defending crate didn't want to do that, because they knew that there was no agency claim there, that this was a fault apportionment claim. And therefore, they wanted to continue defending, they would not have prevailed on that claim because the plaintiffs never made an agency claim. And that's what we're talking about here. There are no allegations, other than the boilerplate bold faced agent officer and employee claim to support an agency relationship that could or might trigger the vicarious liability endorsement in question. And if you ever assume the defense of a party under an endorsement, such as that, then the issue becomes, when in the world, do you reach the point on indemnification where the plaintiff says that this is not an agency claim, and therefore you were exonerated from the duty to defend. And Illinois law also says, if you accept the defense, and it turns out that the acceptance of the defense was in error, then you are entitled under the general agent's case to recover back your attorney's fees. So there was clearly no agency relationship here, and we respectfully submit that the decision below it should be reversed in all respects as to the initial duty to defend and as to any duty to defend after United Fire paid its policy limits and obtained releases for its named in short all seasons. All right. Thank you very much. Our thanks to both counsel. The case is taken under.